(C.D. 2741)

JAPAN FOOD CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 2, 1966)

*Glad & Tuttle (Edward N. Glad* and *Robert Glenn White* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Glenn E. Harris,* trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Merchandise described as prepared dried fish powder was imported from Japan. Dried ground bonito (fish) and dried ground kelp, or seaweed, had been mixed in formula proportions, with seasonings and a preservative added, and thus was produced the imported powder. It was sold under the Japanese name "Niko Niko Bushi" Kikuya Brand, for use as soup stock.

The collector classified the merchandise at bar as an unenumerated manufactured article, an edible preparation for human consumption, dutiable under paragraph 1558 at 20 per centum ad valorem.

The claim in plaintiff's protests in these three consolidated cases is for classification as dried fish, under paragraph 720(b). Not specified in the protest, but urged on trial, plaintiff relies on the provisions of section 508, which have to do with duty on commingled merchandise, not segregated, in claiming duty under paragraph 720(b). The soup stock powder is composed of merchandise which in part is dutiable and in part is duty free.

The respective tariff provisions are, in relevant part, as follows:

Paragraph 720(b), as modified (T.D. 51802):

Fish, prepared or preserved, not specially provided for:

 &ast; &ast; &ast; &ast; &ast; &ast; &ast;

In bulk or in immediate containers, weighing with
their contents more than fifteen pounds each_____ 1¢ per lb.
net wt.

Paragraph 1722, as amended (T.D. 55107):

* * * seaweeds not further manufactured than ground, powdered, or granulated. [Free.]

Paragraph 1558:

That there shall be levied, collected, and paid * * * on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Sec. 508 [as amended by T.D. 53318]. Commingling of goods.

(a) Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise cannot be readily ascertained by the customs officers (without physical segregation of the shipment or the contents of any entire package thereof), by one or more of the following means: (1) Examination of a representative sample, (2) occasional verification of packing lists or other documents filed at the time of entry, or (3) evidence showing performance of commercial· settlement tests generally accepted in the trade and filed in such time and manner as may be prescribed by regulations of the Secretary of the Treasury, and if the consignee or his agent shall not segregate the merchandise pursuant to subsection (b), then the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof.

Plaintiff does not argue that the imported merchandise could have been segregated, and it clearly was not segregated either by the customs officer or by the importer.

Mr. Yoshiro Isobe testified for plaintiff. He described himself as a salesman in the employ of Japan Food Corp., the plaintiff herein. Plaintiff also introduced into evidence an illustrative sample of the imported merchandise. Defendant rested on the record as developed by plaintiff.

The uncontradicted evidence shows that Marukai Trading Co., Osaka, prepared the soup stock powder of these importations according ·to formula, as described *supra.*

The issue litigated here is whether the provision for commingled merchandise (section 508) brings the merchandise at bar, on the facts of record, within the enumeration of paragraph 720(b), as plaintiff claims. Resolution of this issue requires a determination as to whether this so-called dried fish powder is such commingled unsegregated merchandise as section 508 contemplates. Plaintiff says that it is. Defendant says it is not, because in fact it is not possible to segregate the dried fish and dried seaweed, they having been manufactured into a new article of commerce which is the dried fish powder, or soup stock, of the importation.

We agree with defendant as to the scope and purpose of section 508. Careful reading of the language which Congress used requires us to distinguish between imported goods that are merely "packed

together or mingled" and those that have been subjected to a process of manufacture. The test here is not whether the mixed materials have or have not been segregated. The test is whether the asserted commingling is merely that, or is a process of manufacture.

Plaintiff cites the following cases as authority for the relief which it seeks:

*United States* v. *E. E. Holler*, 28 CCPA 124, C.A.D. 133.

*United States* v. *F. W. Myers & Co., Inc.*, 45 CCPA 48, C.A.D. 671.

*Archer-Daniels-Midland Company* v. *United States*, 32 Cust. Ct. 305, C.D. 1618.

*United States* v. *M. Lobsitz*, 16 Ct. Cust. Appls. 475, T.D. 43213.

*B. R. Anderson & Co.* v. *United States*, 8 Cust. Ct. 461, Abstract 46922.

*Anderson Organization* v. *United States*, 46 CCPA 47, C.A.D. 694.

*United States* v. *Smith & Nessle Co. et al.*, 4 Ct. Cust. Appls. 70, T.D. 33312.

*U.S. Industrial Chemicals, Inc.* v. *United States*, 29 Cust. Ct. 131, C.D. 1458.

In *Holler, supra*, a decision handed down in 1940 by our appeals court, the facts were that fish caught by the crew of a United States documented vessel (duty free fish) were packed together" in that vessel with fish that had been caught by Mexican nationals in their canoes (dutiable fish). The dutiable and non-dutiable fish were not segregated, either by the collector or by the importer. No one seems to have argued that any part of the commingled merchandise was anything other than the tariff article "fish." The trial court sustained the protest claim to duty-free entry for the entire shipment of fish, apparently on the theory that the Mexican canoes, having been rented to the master of the United States documented vessel, brought the catch of those canoes within the duty free provision. Our appeals court reversed, sustaining the assessment of duty on the entire commingled catch under authority of section 508, saying:

The section is very clear. It obviously presupposes that *where the customs officials are able readily to ascertain and segregate portions of imported commingled goods for duty purposes they will do so*, and certain of the decisions above cited are to the effect that when there is a failure on their part to do this *in cases where they might readily have made the ascertainment, the importer may make protest and present proof upon the subject* matter at the trial. When, however, such officials are unable readily to determine the proper segregation the burden is placed upon the importer to "segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertaned." [P. 130, emphasis supplied.]

In arguing that *Holler* is authority for the proposition that section 508 is applicable to the instant facts, plaintiff overlooks the rule laid down by the court in the above quoted language. It is only when the customs officials are able readily to segregate, and fail to do this, that the importer is put in a position to make protest. This is the condition antecedent to the right to protest under section 508. Here we have no such protest against failure of the collector to segregate, but merely a claim to paragraph 720(b) classification of an article which is conceded to be more than, or different from, the articles that are enumerated in paragraph 720(b).

Not having elected to stand on a claim that the collector failed to segregate commingled goods which he could have segregated, the burden fell on plaintiff to segregate within the time and in the manner which section 508 specifies. This the plaintiff did not do, probably because it could not segregate this merchandise any more than could the collector.

In *United States* v. *F. W. Myers & Co., Inc.*, *supra*, cited by plaintiff, the issue was whether imported merchandise was "packing-box shooks" within the enumeration of paragraph 407, or whether packing-box shooks had been commingled with other unsegregated lumber so as to invoke the provisions of paragraph 508. Plaintiff adduced testimony, based on personal knowledge, that the shipments at bar consisted of sets of parts of boxes, including ends, in knocked-down condition. These were held to be within the definition of the tariff enumeration for "packing-box shooks." Defendant's witnesses had no personal knowledge of the shipments about which they testified. Indeed, the deputy collector at the port of entry testified that he did not personally examine any of the merchandise.

*Myers* supports classification of merchandise, found on the facts of record to be manufactured and non-commingled, under an enumeration descriptive of *all* the entered merchandise.

The merchandise in *Archer-Daniels-Midland Company* v. *United State*, *supra*, consisted of mixed sperm oil and whale oil, which were held to be dutiable under the provision for "Combinations and mixtures of animal, vegetable, or mineral oils," paragraph 57. The importer made no application to segregate the sperm oil from the whale oil, pursuant to section 508, and his witness conceded that he did not believe it was possible to segregate them. Plaintiff's protest claim to assessment of the entire mixture as whale oil, invoking section 508, was overruled.

In *United States* v. *M. Lobsitz*, *supra*, the provision construed was section 507 of the Tariff Act of 1922, forerunner of the current section 508, but different from it in some respects. The alternative protest

claims were to classification as wool waste or as silk wastes. Plaintiff was held not to have sustained its burden of proof, and the collector's classification of the commingled merchandise was upheld.

Subsequent to the decision in *Lobsitz*, Congress revised the statutory language there construed. It is section 508, as amended by the Customs Simplification Act of 1953, which we are called upon to construe.

There were no proofs in *Lobsitz* that the mixture of wool thread *waste*, artificial silk thread *waste*, and oil was manufactured rather than commingled. The determinative fact in the *Lobsitz* case, inducing our appeals court to reverse the decision below, was that two commercial entities, wool waste and silk waste, did not in combination form a new product or article of commerce.

In *B. R. Anderson & Co.* v. *United States, supra, poo char,* a so-called Chinese medicine, assessed under paragraph 23 of the 1930 act, was claimed, alternatively, to be free of duty under paragraph 1669 or dutiable under paragraph 34. The parties stipulated that the merchandise consisted of drugs, some of which were advanced in value and some of which were crude. No attempt was made to segregate the value-advanced drugs from the crude drugs. This court held that the merchandise was dutiable under paragraph 34.

In *Anderson Organization* v. *United States, supra,* a product consisting of beef and gravy was classified as beef packed in air-tight containers, a product specifically enumerated and excluded from the reduced rate of duty provided in paragraph 706, as modified by the General Agreement on Tariffs and Trade (T.D. 51802). The importer claimed the merchandise was something more than beef packed in air-tight containers, that it consisted of meats, prepared or preserved, not specially provided for, and was entitled to the paragraph 706 GATT reduced duty rate. Our appeals court held that the limited amount of gravy included with the beef did not alter the essential character of the beef, affirming the decision of this division and sustaining the collector's classification.

*United States* v. *Smith & Nessle Co. et al., supra,* an old case decided in 1913, had to do with the classification of herring and mackerel which were packed in sealed tin cans. The collector assessed the herring and mackerel as fish in tin packages, under paragraph 270 of the 1909 act. The importer claimed that the herring and mackerel were pickled or salted and were dutiable under two *eo nomine* provisions, for herring in paragraph 272 and for mackerel in paragraph 273. The issue was one of fact, whether the fish actually were pickled or salted. On review of the record the court of appeals affirmed the decision of this court, sustaining the importer's protest claim.

In *U.S. Industrial Chemicals, Inc.* v. *United States, supra,* a quantity of blackstrap molasses, in part imported from the Dominican Republic and in part from Cuba, had been mixed in the tanks of the importing vessel and was imported in bulk for industrial use. The documents that were before the collector clearly showed the respective quantities of Dominican and Cuban molasses in the commingled importation. The collector, pursuant to section 508, assessed duty on the entire shipment, under paragraph 502 of the 1930 act, as molasses not imported to be commercially used for the extraction of sugar for human consumption. The importer protested, claiming that the part of the molasses shown in the customs documents to be a product of Cuba should have been assessed under paragraph 502 at the reduced rate provided under the trade agreement with Cuba. This court sustained the protest, holding that where the portion of molasses imported from Cuba was readily ascertainable by customs officers from available documents, following approved methods, section 508 was not applicable.

In all these cases the courts have, quite properly, distinguished between the tariff concepts of "commingled" and "manufactured" articles on the facts of record in each case.

Paragraph 1558 provides tariff classification for articles manufactured, in whole or in part, that are not enumerated elsewhere. It is, in effect, the catch-all, or basket, enumeration of the tariff law.

On the facts before us, we find that the merchandise at bar is a manufactured article. Indeed, nowhere in plaintiff's brief do we find it argued that the process to which ingredients were subjected in Japan was not, in the tariff sense, a process of manufacture.

What plaintiff argues seems to be that when the resultant manufactured article, made of a mixture of materials, is not within some specific tariff enumeration, it falls within the ambit of section 508. This, of course, implies that all unenumerated manufactures which are made from two or more materials, could be lifted out of paragraph 1558 classification. What plaintiff seeks would seem to be legislation by judicial decision, incorporating into the law something akin to the mixed materials clause which Congress has repealed.

We do not so read section 508. Here there has been produced, by manufacture, a new article of commerce. This is not the kind of packing together, or commingling process, to which section 508 refers.

We do not consider whether the collector correctly classified this soup stock as an unenumerated article, for that is an issue not now before us. The issue before us, raised by plaintiff's protests, is whether this powder, marketed as soup stock, should be classified under paragraph 720(b) as fish.

The protests are overruled. Judgment will be entered accordingly.